1
2
3
4

UNITED STATES DISTRICT COURT

5

DISTRICT OF NEVADA

6

* * *

7   RICHARD BANDA,                              Case No. 2:19-cv-00095-RFB-DJA

8                           Plaintiff,          SCREENING ORDER

9          v.

10  JOHN DOE, *et al.*,

11                          Defendants.

12

13          Plaintiff, who currently is a prisoner in the custody of the Nevada Department of

14  Corrections ("NDOC"), has submitted an amended civil rights complaint pursuant to 42

15  U.S.C. § 1983 and has filed an application to procceed *in forma pauperis*.  (ECF No. 1,

16  16).  Based on the information regarding Plaintiff's financial status, the Court finds that

17  Plaintiff is not able to pay an initial installment payment toward the full filing fee pursuant

18  to 28 U.S.C. § 1915.  The Court therefore grants the application to proceed *in forma*

19  *pauperis*.  Plaintiff will, however, be required to make monthly payments toward the full

20  $350.00 filing fee when he has funds available. The Court now screens Plaintiff's

21  amended civil rights complaint pursuant to 28 U.S.C. § 1915A.[1]

22  **I.      SCREENING STANDARD**

23          Federal courts must conduct a preliminary screening in any case in which a

24  prisoner seeks redress from a governmental entity or officer or employee of a

25  governmental entity.  See 28 U.S.C. § 1915A(a).  In its review, the court must identify any

26  cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim

27

28          [1] An amended complaint replaces an earlier complaint. See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1546 (9th Cir. 1989).  Therefore, the operative complaint is the First Amended Complaint (ECF No. 16).

upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1),(2).  *Pro se* pleadings, however, must be liberally construed.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act (PLRA), a federal court must dismiss a prisoner's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).  Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint.  When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment.  See Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law.  See Chappel v. Lab. Corp. of America, 232 F.3d 719, 723 (9th Cir. 2000).  Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief.  See Morley v. Walker, 175 F.3d 756, 759 (9th Cir. 1999).  In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff.  See Warshaw v. Xoma Corp., 74 F.3d 955, 957 (9th Cir. 1996).  Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers.  See Hughes v. Rowe, 449 U.S. 5, 9 (1980).  While

- 2 -

the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A formulaic recitation of the elements of a cause of action is insufficient.  Id.

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth."  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." Id.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Id. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact.  This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios).  See Neitzke v. Williams, 490 U.S. 319, 327-28 (1989); see also McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991).

## II.   SCREENING OF FIRST AMENDED COMPLAINT

In the First Amended Complaint ("FAC"), Plaintiff sues Naphcare, Inc. for events that allegedly took place while he was incarcerated at the Clark County Detention Center ("CCDC").  ECF No. 16 at 1-2. In addition, the FAC lists John/Jane Does 1-5 as defendants.  Id. at 1-3.  Plaintiff brings one count and seeks damages and declaratory relief. Id. at 4, 14.

The FAC alleges the following:  During Plaintiff's incarceration at Clark County Detention Center ("CCDC"), Naphcare, Inc. and Does contracted with the Las Vegas

1   Metropolitan Police Department ("LVMPD") and were the medical provides at CCDC. Id.
2   at 4.  By the end of April of 2017, Plaintiff experienced strong and persistent symptoms
3   of dehydration and fainting in his cell.  Id.  After medical staff responded to a "man-down"
4   emergency medical call, Plaintiff conveyed his persisting symptoms of dehydration and
5   fainting.   Id.   A Doe nurse asked Plaintiff to stand up.   Id.   Plaintiff complied and
6   immediately fainted.  Id.

7   A Doe physician injected Plaintiff with steroids and ordered Plaintiff admitted to the
8   infirmary for further evaluation and treatment.  Id.  Upon infirmary admission and at the
9   direction of the treating physician, medical staff placed Plaintiff on an I.V. for his
10  dehydration.   Id.   The attending physician, "exercising professionally sound medical
11  judgment" to protect Plaintiff, "unequivocally ordered" Doe medical staff to flush and
12  sanitize Plaintiff's I.V. twice daily for two days prior to removing it.  Id. at 4-5.

13  "Cognizant of the inherent risks posed to Plaintiff by doing so, medical staff Does
14  deliberately defied and ignored the physician's standing medical orders, failing to flush,
15  clean and remove the I.V. in the time ordered by Plaintiff's treating physician." Id. at 5.
16  After five days, the treating physician returned to observe the onset of infection due to the
17  Doe nurses defying and contravening the treating physician's orders. Id. The treating
18  physician did not know that an internal MRSA infection had advanced in Plaintiff's
19  bloodstream by that time.  Id.  Methicillin-resistant staphylococcus avreus ("MRSA") is
20  universally acknowledged within the medical community as causing infections, some of
21  which could be fatal.  Id.  It is common knowledge that MRSA can be spread through
22  materials or instruments and that the risk of transmission is increased by conditions such
23  as overcrowding, shared facilities, incarceration, close contact between inmates, and
24  unsanitary conditions, facts which were known to the ordering physician and the Doe
25  medical staff who ignored the physician's order.  Id. at 6.  The physician did not know or
26  foresee that Plaintiff already had an MRSA infection and ordered the I.V. removed,
27  ordered medication for Plaintiff, discharged Plaintiff from the medical unit, and assured
28  Plaintiff that he should be okay.  Id.

As a result of the deliberate indifference of the Does in defying and refusing to adhere to the physician's orders, Plaintiff had, in fact, already contracted an infection and it was worsening. Id. After being discharged, Plaintiff began experiencing a swollen arm, cold chills and sweats, and broke out in red, itchy hives. Id. Plaintiff called a man-down. Id. at 7. The medical team arrived and took his temperature, which was high. Id. This prompted blood tests and, when the blood test results came back, Plaintiff was diagnosed with a blood infection and was sent to the hospital. Id.

At the hospital, Plaintiff was evaluated and tested and was administered antibiotics, which were not effective. Id. Three or four days later, Plaintiff developed painful holes in his chest and stomach cavities, which were releasing poisonous discharges. Id.

Plaintiff asserts that the diagnostic testing at the hospital concluded that "Plaintiff had incurred and contracted staff infection in his blood due to the deliberate indifference of Does and their conscious failures to adhere to, execute and carry out physician orders by refusing to clean, flush and ultimately timely extract the I.V. from his arm subsequent to his CCDC infirmary admission." Id.

Plaintiff was subjected to enormous pain, discomfort, and suffering as a result of "Defendants deliberate indifference." Id. at 8. He continues to experience the painful symptoms and has permanent and persistent recurring painful discharge in his chest and abdominal cavities. Id.

Plaintiff concludes that Defendants' consciously and intentionally defying, deviating from, ignoring, and failing to carry out the physician order issued to protect Plaintiff violated his constitutional rights. Id. at 8-9. In particular, Plaintiff concludes that his Eighth Amendment and Fourteenth Amendment rights were violated.

Plaintiff refers to both the Eighth Amendment and Fourteenth Amendment. However, a pretrial detainee is protected from conditions constituting punishment under the Due Process Clause of the Fourteenth Amendment, while a convicted prisoner is protected by the Eighth Amendment's Cruel and Unusual Punishment Clause. Bell v.

1   Wolfish, 441 U.S. 520, 535 n. 16 (1971).  Because Plaintiff was at CCDC at the time of
2   the alleged events, the Court will liberally construe the FAC and presume that Plaintiff
3   was a pre-trial detainee and that the Fourteenth Amendment's more lenient standard
4   applies and the Eighth Amendment does not apply.

5       The Court will address Plaintiff's claims against the Doe defendants first and then
6   address the claim against Naphcare, Inc..

7   **A.  Claims Against Doe Defendants**

8       As the Court previously explained[2], a pretrial detainee's claim of denial of the right
9   to adequate medical care under the Fourteenth Amendment is analyzed under an
10  objective deliberate indifference standard.  Gordon v. Cty. of Orange, 888 F.3d 1118,
11  1124–25 (9th Cir.  2018).  The elements of such a claim are: "(i) the defendant made an
12  intentional decision with respect to the conditions under which the plaintiff was confined;
13  (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the
14  defendant did not take reasonable available measures to abate that risk, even though a
15  reasonable official in the circumstances would have appreciated the high degree of risk
16  involved—making the consequences of the defendant's conduct obvious; and (iv) by not
17  taking such measures, the defendant caused the plaintiff's injuries.  Id. at 1125.  "With
18  respect to the third element, the defendant's conduct must be objectively unreasonable,
19  a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'"
20  Id. (quoting Castro v. County of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016)). A
21  plaintiff must "prove more than negligence but less than subjective intent—something akin
22  to reckless disregard."  Id.  The mere lack of due care is insufficient.  Id.

23      Plaintiff alleges facts sufficient to show that he was at risk of suffering a harmful
24  infection if his I.V. was not flushed and sanitized. Liberally construing the FAC for
25  purposes of screening only, the Court finds that the FAC alleges facts that might be

---

[2] See ECF No. 6 at 5.

sufficient to show that the Doe nurses[3] who were ordered to flush and clean the I.V. made an intentional and deliberate unreasonable decision to consciously defy those orders despite having medical knowledge of the attendant risks of contracting a dangerous infection if the orders were defied, causing Plaintiff to contract a new infection that caused him pain from the discharges in his chest and abdominal cavities.  This would be sufficient to state a colorable claim against the nurses for purposes of screening and for these claims to proceed if Plaintiff had named these nurses.

However, Plaintiff has not included in the FAC the names of any of these nurses. A complaint cannot be served on an unnamed defendant and this case therefore cannot proceed against the Doe nurses at this time.  For Plaintiff's claims to proceed against the Doe nurses, he must amend his complaint to include the real names of the defendants and allege true facts sufficient to state colorable claims against <u>each</u> of those <u>named</u> defendants.  If Plaintiff does not know or remember those names, he must either review the records he currently has in his possession to identify those names or file a properly supported and complete motion for the Court to issue a Rule 45 subpoena duces tecum so that he may obtain records that would have that information.  If Plaintiff chooses to move for issuance of a Rule 45 subpoena duces tecum, he must attach a copy of his proposed Rule 45 subpoena(s) to his motion, and that motion must clearly identify the documents that would have the information Plaintiff seeks and also explain why the documents and information would be available from the entity or person that is the target of the subpoena.  Plaintiff is directed to carefully review Rule 45 of the Federal Rules of Civil Procedure before filing such a motion.

If Plaintiff chooses to file a second amended complaint with the true names of the defendants, he is advised that a second amended complaint will completely replace the

---

[3] In his description of the five Doe Defendants, Plaintiff describes them as "medical provider staff."  (ECF No. 16 at 2-3).  It appears that Plaintiff is alleging that it was the unnamed nurses who violated his constitutional rights by allegedly deliberately disobeying the doctor's orders.  The Court therefore construes Doe Defendants 1-5 to be the nurses who allegedly deliberately disobeyed the orders.

FAC and the second amended complaint therefore must be <u>complete</u> in itself, including the relevant factual allegations against each named defendant.  <u>See</u> <u>Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.</u>, 896 F.2d 1542, 1546 (9th Cir. 1989).  Plaintiff should file the second amended complaint on this Court's approved prisoner civil rights form and it must be entitled "Second Amended Complaint."  For <u>each</u> defendant, Plaintiff must name the defendant and allege true facts sufficient to show that the particular named defendant violated Plaintiff's civil rights.  If Plaintiff does not amend the complaint to state a colorable claim against a named defendant within 60 days of the date of this order, the Court will dismiss this case with prejudice.

**B.  Claim Against Naphcare, Inc.**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts sufficient to show that the alleged violation was committed by a person acting under color of state law, and state action is required in order to establish a Fourteenth Amendment violation.  <u>West v. Atkins</u>, 487 U.S. 42, 48-49 (1988).  These two issues require the same inquiries.  <u>Id.</u> at 49 (recognizing that if a defendant's conduct satisfies the state action requirement of the Fourteenth Amendment that conduct also is action under color of state law for purposes of § 1983).  Naphcare, Inc. is a private entity.  Merely providing contracted services to a state entity does not mean that the private contractor is acting under color of state law.  <u>Manhattan Cmty. Access Corp. v. Halleck</u>, 139 S. Ct. 1921, 1931-32 (2019).  Such a private entity acts under color of state law only if it is performing a traditional, exclusive public function.  <u>Id.</u> at 1931.  For purposes of this order, the Court will assume that Naphcare, Inc. was acting under color of state law by providing medical services to prisoners at Washoe County Jail.

However, when a private entity acts under color of law to perform a traditional, exclusive function in place of a municipality, then the plaintiff must establish a policy or custom theory of municipal liability against that private entity.  <u>Tsao v. Desert Palace, Inc.</u>, 698 F.3d 1128, 1139 (9th Cir. 2012); <u>Buckner v. Toro</u>, 116 F.3d 450, 452 (11th Cir. 1997);

Saddiq v. Trinity Servs. Grp., No. CV131671PHXROSMHB, 2015 WL 13684700, at *7 (D. Ariz. Jan. 15, 2015).  Thus, if Plaintiff wishes to hold Naphcare, Inc. liable, he must first state a colorable claim against Naphcare, Inc. based on a theory of municipal liability.

A municipality may not be held liable under § 1983 on a *respondeat superior* theory, which means that a municipality may not be held liable merely because it employed someone who violated someone's civil rights.  Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690-91 (1978).  Thus, Naphcare, Inc. may not be held liable merely because it employed a nurse who violated Plaintiff's constitutional rights.  See Henry v. Naphcare, Inc., No. 2:10-CV-00790-GMN, 2010 WL 3703721, at *3 (D. Nev. Sept. 13, 2010).

Municipalities may be held liable under § 1983 if action pursuant to municipal custom or policy caused a constitutional violation that damaged the plaintiff.  Id.  There must be a custom or policy and that custom or policy must have caused the alleged constitutional deprivation.  Castro v. County of Los Angeles, 833 F.3d 1060, 1075 (9th Cir. 2016).  Furthermore, the plaintiff also must show that the custom or policy was adhered to with deliberate indifference to the prisoners' constitutional rights.  Id. at 1076.  The deliberate indifference standard for municipalities is an objective inquiry into whether the facts known by the municipal policymakers put them on constructive notice that the particular conduct or omission is substantially certain to result in the violation of constitutional rights.  Id.

Merely including a conclusory allegation that there is a custom or policy is insufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 680–81 (2009).  A plaintiff must go beyond bare assertions and plead facts sufficient to show that there is a policy and what the policy is.  Id. at 678-81.  To adequately allege a custom, a plaintiff must allege facts sufficient to show a practice or custom that constitutes the standard operating procedure of the local government  entity. See Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).  "The custom must be so 'persistent and widespread' that it constitutes a permanent and

well settled city policy." Id. (quoting Monell, 436 U.S. at 691). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Id.

Plaintiff fails to state a colorable claim against Naphcare, Inc.  Plaintiff has not alleged facts sufficient to show a policy or custom adhered to with deliberate indifference that has caused a violation of Plaintiff's constitutional rights.  The FAC merely alleges that Naphcare, Inc. contracted with the LVMPD and was responsible for the provision of medical care to the inmates, including Plaintiff.  Such allegations do not state a colorable municipal claim against Naphcare, Inc.. The Court therefore dismisses the claim against Naphcare, Inc. without prejudice.  If Plaintiff chooses to include a claim against Naphcare, Inc. in the second amended complaint, Plaintiff must identify the alleged facts upon which he is basing any such claim.  He must allege true facts sufficient to show that nurses violated his constitutional rights, but also must allege true facts sufficient to show that this constitutional violation was caused by a Naphcare, Inc. policy, custom or practice that was established with deliberate indifference.  Plaintiff cannot state a claim merely by using the terminology the Court used to explain the relevant law.  He must allege facts that would show not only the existence and specific requirements of the policy or practice but also that the nurses engaged in their unconstitutional course of conduct because they were complying with the policy or practice.

## C.  Leave to Amend

Plaintiff is granted leave to file a second amended complaint to cure the deficiencies of the claims in the FAC, as outlined above.  If Plaintiff chooses to file an amended complaint, he is advised that a second amended complaint entirely replaces the FAC and, thus, the second amended complaint must be complete in itself, including factual allegations against each named defendant that are sufficient to state a colorable claim against each particular named defendant. See Hal Roach Studios, Inc. v. Richard

1    _Feiner & Co., Inc._, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party
2    was named in the original complaint is irrelevant; an amended pleading supersedes the
3    original").  Plaintiff should file the second amended complaint on this Court's approved
4    prisoner civil rights form and it must be entitled "Second Amended Complaint."  Plaintiff
5    may not amend the complaint to add unrelated claims against other defendants.
6    Furthermore, an amended complaint does not include claims based on events that have
7    taken place since the original complaint was filed.

8          The Court notes that, if Plaintiff chooses to file a second amended complaint curing
9    the deficiencies, as outlined in this order, Plaintiff must file the amended complaint within
10   60 days from the date of entry of this order.  If Plaintiff chooses not to file an amended
11   complaint curing the stated deficiencies, this action will be dismissed with prejudice.

12   **III.    CONCLUSION**

13         For the foregoing reasons, it is ordered that Plaintiff's application to proceed _in_
14   _forma pauperis_ (ECF No. 1) without having to prepay the full filing fee is granted.  Plaintiff
15   shall not be required to pay an initial installment fee.  Nevertheless, the full filing fee shall
16   still be due, pursuant to 28 U.S.C. § 1915, as amended by the Prisoner Litigation Reform
17   Act.  The movant herein is permitted to maintain this action to conclusion without the
18   necessity of prepayment of fees or costs or the giving of security therefor.  This order
19   granting _in forma pauperis_ status shall not extend to the issuance and/or service of
20   subpoenas at government expense.

21         It is further ordered that, pursuant to 28 U.S.C. § 1915, as amended by the Prisoner
22   Litigation Reform Act, the Nevada Department of Corrections shall pay to the Clerk of the
23   United States District Court, District of Nevada, 20% of the preceding month's deposits to
24   the account of Richard Banda, # 1183134 (in months that the account exceeds $10.00)
25   until the full $350 filing fee has been paid for this action.  The Clerk shall send a copy of
26   this order to the attention of Chief of Inmate Services for the Nevada Department of
27   Prisons, P.O. Box 7011, Carson City, NV 89702.

28         It is further ordered that, even if this action is dismissed, or is otherwise

unsuccessful, the full filing fee shall still be due, pursuant to 28 U.S.C. §1915, as amended by the Prisoner Litigation Reform Act.

It is further ordered that the operative complaint is the First Amended Complaint (ECF No. 16), and the Clerk of Court shall send Plaintiff a courtesy copy of the First Amended Complaint.

It is further ordered that the FAC is dismissed without prejudice and with leave to file a second amended complaint to cure the FAC's deficiencies.

It is further ordered that, if Plaintiff chooses to file an amended complaint curing the deficiencies of his complaint, as outlined in this order, Plaintiff shall file the amended complaint within 60 days from the date of entry of this order.

It is further ordered that the Clerk of the Court shall send to Plaintiff the approved form for filing a § 1983 complaint and instructions for the same.  If Plaintiff chooses to file a second amended complaint, he should use the approved form and he must write the words "Second Amended" above the words "Civil Rights Complaint" in the caption.

It is further ordered that, if Plaintiff fails to file a timely second amended complaint, this action shall be dismissed with prejudice.


DATED: April 13, 2021.


_____
RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE