UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| RICHARD BANDA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NAPHCARE, INC., et al.,<br><br>　　　　　Defendants. | Case No. 2:19-cv-00095-RFB-DJA<br><br>**ORDER** |

　　　　This action began with a civil-rights complaint and application to proceed in forma pauperis ("IFP") filed by state prisoner Plaintiff Richard Banda concerning events that allegedly occurred while he was in pretrial detention at Clark County Detention Center ("CCDC"). (ECF Nos. 1-1, 1). The Court previously granted Banda's IFP. (ECF No. 20 at 11). According to the Nevada Department of Corrections ("NDOC") prisoner database, Banda is currently incarcerated at High Desert State Prison ("HDSP").

　　　　In screening Banda's Complaint, the Court construed it as stating three claims for relief: (1) a Fourteenth Amendment claim for deliberate medical indifference, (2) a Fourteenth Amendment Equal Protection Clause claim, and (3) a claim for discrimination under the Americans with Disabilities Act. (ECF No. 6). The Court dismissed all of Banda's claims with prejudice because he expressly alleged facts amounting only to negligence, not deliberate indifference, and did not allege that he was discriminated against because of a disability. (Id. at 3–7). Banda moved for reconsideration and the Court granted him that relief, allowing him leave to file a first amended complaint to correct the deficiencies of his deliberate medical indifference claim. (ECF Nos. 8, 15).

　　　　Banda timely filed a First Amended Complaint ("FAC") realleging his deliberate medical indifference claim. (ECF No. 16). In screening the FAC, the Court found that

Banda did not state a colorable deliberate medical indifference claim against Defendant Naphcare, Inc. but did state a colorable claim against the Doe medical staff who allegedly consciously ignored the doctor's order to flush and clean the I.V. that had been placed in Banda during his stay in CCDC's infirmary in April and May 2017. (Id.) at 6–7). But because Banda did not identify the true name of any Doe Defendant, the Court granted him leave to file a second amended complaint naming those defendants and instructed Banda to review the medical records in his possession to find their names and, if those records were not helpful, to move the Court "to issue a Rule 45 subpoena duces tecum so that he may obtain records that would have that information." (Id. at 7).

Shortly thereafter, Banda moved the Court to issue a Rule 45 subpoena duces tecum. (ECF No. 21). The Court denied Banda's motion as premature. (ECF No. 22). Banda objected to that order and sought more time to file a second amended complaint. (ECF Nos. 23, 24). In a Minute Order dated May 30, 2021, the Court gave Banda more time to file a second amended complaint and ordered that he should be provided a copy of his medical records to keep in his cell to pursue his claims in this case. (ECF No. 25).

Banda moved to amend the Court's May 30, 2021, order because it had not been properly "served on the custodian of medical records of WellPath at CCDC." (ECF No. 26 at 2). The Court granted Banda's motion to amend on June 28, 2021, instructing that "[t]he warden at HDSP is ordered to provide [Banda] with a copy of his medical records from CCDC or direct the vendor that provides services for HDSP to provide these records." (ECF No. 27 at 1). But through inadvertence, the Court's June 28, 2021, order wasn't served on anyone other than Banda.

Banda didn't catch that mistake, and when no medical records materialized in his cell, he understandably moved the Court to require HDSP Warden Calvin Johnson to show cause why he has not complied with the Court's June 28, 2021, order. (ECF No. 28). He also moves the Court to find and appoint him a free attorney. (ECF No. 29). And to act on his show-cause motion. (ECF No. 30).

To rectify past mistakes and move this case forward, the Court takes several steps in this order. First, the Court vacates its order screening the FAC and its orders directing pre-service discovery dated May 30, 2021, and June 28, 2021. (ECF Nos. 20, 25, 27). Second, the Court denies as moot Banda's motion for an order to show cause why Johnson did not comply with the Court's now-vacated order dated June 28, 2021. (ECF No. 28). Third, the Court denies as moot Banda's motion to act on his now-denied show-cause motion. (ECF No. 30). Fourth, the Court reconstrues Banda's objections to the Court's order denying his Motion for a Rule 45 subpoena duces tecum as a motion for reconsideration. (ECF No. 23). Fifth, the Court grants the motion for reconsideration and vacates its Order dated April 26, 2021 (ECF No. 22) denying Plaintiff's motion for a Rule 45 subpoena. The Court directs the Clerk of the Court to issue the subpoena.

Finally, as discussed more fully below, the Court screens the FAC anew. Finding that Banda states colorable deliberate medical indifference claims against Naphcare, Inc. and John/Jane Does 1–5, the Court allows him to proceed on those claims. And the Court provides Banda guidance for seeking the true names of those Doe Defendants. Finally, the Court denies Banda's motion for appointment of counsel.

**I.   SCREENING THE FAC**

    **A.   Screening Standard**

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. See id. §§ 1915A(b)(1), (2). Pro se pleadings, however, must be liberally construed. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States; and

(2) that the alleged violation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, under the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. See Chappel v. Lab. Corp. of Am., 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it the plaintiff clearly cannot prove any set of facts in support of the claim that would entitle him or her to relief. Id. at 723–24. In making this determination, the Court takes as true all allegations of material fact stated in the complaint, and the Court construes them in the light most favorable to the plaintiff. Warshaw v. Xoma Corp., 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a pro se complainant are held to less stringent standards than formal pleadings drafted by lawyers. Hughes v. Rowe, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. Id.

Additionally, a reviewing court should "begin by identifying [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of

truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." Id. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Id. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Finally, all or part of a complaint filed by an incarcerated person may be dismissed sua sponte if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable—like claims against defendants who are immune from suit or claims of infringement of a legal interest that clearly does not exist—as well as claims based on fanciful factual allegations like fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327–28 (1989).

### B. Factual allegations

In the FAC, Banda sues Naphcare, Inc. and John/Jane Does 1–5 for events that allegedly took place while he was incarcerated at CCDC. (ECF No. 16 at 1). Banda brings one count and seeks declaratory and monetary relief. (Id. at 4–9, 14).

Banda alleges the following. During his incarceration at CCDC, Naphcare and the Doe Defendants contracted with the Las Vegas Metropolitan Police Department ("LVMPD") and were the medical providers at CCDC. (Id. at 4). By the end of April of 2017, Banda experienced strong and persistent symptoms of dehydration and fainting in his cell. (Id.) After medical staff responded to a "man-down" emergency medical call, Banda conveyed his persisting symptoms of dehydration and fainting. (Id.) A Doe nurse asked Banda to stand up. (Id.) Banda complied and immediately fainted. (Id.)

A Doe physician injected Banda with steroids and ordered him admitted to the infirmary for further evaluation and treatment. (Id.) Upon infirmary admission and at the direction of the treating physician, medical staff placed Banda on an I.V. for his dehydration. (Id.) The attending physician, "exercising professionally sound medical judgment" to protect Banda "unequivocally ordered" Doe medical staff to flush and

sanitize Banda's I.V. twice daily for two days prior to removing it. (Id. at 4–5). "Cognizant of the inherent risks posed to [Banda] by doing so, medical staff Does deliberately defied and ignored the physician's standing medical orders, failing to flush, clean and remove the I.V. in the time ordered by [Banda's] treating physician." (Id. at 5).

After five days, the treating physician returned to observe the onset of infection due to the Doe nurses defying and contravening the treating physician's orders. (Id.) The treating physician did not know that an internal MRSA infection had advanced in Banda's bloodstream by that time. (Id.) Methicillin-resistant staphylococcus avreus ("MRSA") is universally acknowledged within the medical community as causing infections, some of which could be fatal. (Id.) It is common knowledge that MRSA can be spread through materials or instruments and that the risk of transmission is increased by conditions such as overcrowding, shared facilities, incarceration, close contact between inmates, and unsanitary conditions, facts which were known to the ordering physician and the Doe medical staff who ignored the physician's order. (Id. at 6). The physician did not know or foresee that Banda already had an MRSA infection and ordered the I.V. removed, ordered medication for Banda, discharged Banda from the medical unit, and assured Banda that he should be okay. (Id.)

As a result of the deliberate indifference of the Does in defying and refusing to adhere to the physician's orders, Banda had, in fact, already contracted an infection and it was worsening. (Id.) After being discharged, Banda experienced a swollen arm, cold chills and sweats, and broke out in red, itchy hives. (Id.) Plaintiff called a man-down. (Id. at 7). The medical team arrived and took his temperature, which was high. (Id.) This prompted blood tests and, when the blood test results came back, Banda was diagnosed with a blood infection and was sent to the hospital. (Id.)

At the hospital, Banda was evaluated, tested, and administered antibiotics, which were not effective. (Id.) Three or four days later, Banda developed painful holes in his chest and stomach cavities, which were releasing poisonous discharges. (Id.) Banda asserts that the diagnostic testing at the hospital concluded that he "had incurred and

contracted staff [sic] infection in his blood due to the deliberate indifference of Does and their conscious failures to adhere to, execute and carry out physician orders by refusing to clean, flush and ultimately timely extract the I.V. from his arm subsequent to his CCDC infirmary admission." (Id.) Banda was subjected to enormous pain, discomfort, and suffering because of "Defendants deliberate indifference." (Id. at 8). He continues to experience painful symptoms and has permanent and persistent recurring painful discharge in his chest and abdominal cavities. (Id.)

Banda concludes that Defendants were consciously and intentionally defying, deviating from, ignoring, and failing to carry out the physician's order to flush, clean, and eventually remove the I.V., which was issued to protect his violated his constitutional rights. (Id. at 8–9). In particular, Banda concludes that his Eighth Amendment and Fourteenth Amendment rights were violated.

### C. Fourteenth Amendment deliberate medical indifference

A pretrial detainee is protected from conditions constituting punishment under the Due Process Clause of the Fourteenth Amendment, while the Eighth Amendment's Cruel and Unusual Punishment Clause protects a convicted prisoner. Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1971). Because Banda was at CCDC at the time of the alleged events, the Court will liberally construe the FAC and presume that he was a pre-trial detainee and that the Fourteenth Amendment's more lenient standard applies and the Eighth Amendment does not apply.

"Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause." Castro v. City of Los Angeles, 833 F.3d 1060, 1067–68 (9th Cir. 2016) (citing Bell, 441 U.S. at 535 (holding that under the Due Process Clause, a detainee may not be punished prior to conviction)). "Under both clauses, the plaintiff must show that the prison officials acted with "deliberate indifference." Id. The elements of a pretrial detainee's conditions-of-confinement claim are (1) "the defendant made an intentional decision with respect to the conditions under

which the plaintiff was confined;" (2) "those conditions put the plaintiff at substantial risk of suffering serious harm;" (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries." Gordon v. Cnty. of Orange, 888 F.3d 1118, 1124–25 (9th Cir. 2018).

"With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." Id. at 1125 (internal quotation and brackets omitted). What this means is "the plaintiff must prove more than mere negligence but less than subjective intent—something akin to reckless disregard." Id. (internal quotation omitted). Simply put, a detainee's claim is "evaluated under an objective deliberate indifference standard." Id.

### 1. Doe Defendants

Banda alleges that he was at risk of suffering a harmful infection if his I.V. was not flushed and sanitized. He also alleges that Naphcare medical staff who were ordered by the doctor to flush and clean Banda's I.V. twice a day for two days and then to remove it made intentional and deliberate unreasonable decisions to consciously defy those orders despite each of them having medical knowledge of the attendant risks of contracting a dangerous infection if the orders were defined. Banda further alleges that John/Jane Doe Defendants' decisions to ignore the doctor's orders caused him to contract a new infection that caused him pain from the discharge in his chest and abdominal cavities. The Court construes the FAC as alleging that John/Jane Doe Defendants 1–5 are the medical staff, e.g., nurses, who were ordered to flush and clean Banda's I.V. and chose not to do so. The Court finds that the allegations are sufficient for screening purposes to state a colorable claim for deliberate medical indifference against those defendants. So the Fourteenth Amendment deliberate medical indifference claim can proceed against John/Jane Doe Defendants 1–5. And Banda can move the Court to amend his First

Amended Complaint to substitute their true names when he learns them through discovery, which the Court will provide him guidance about later in this order. See Gillespie v. Civiletti, 629 F.2d 637, 642-43 (9th Cir. 1980) (stating that it is error for a court to dismiss a complaint on the basis that plaintiff fails to provide the true names of "John Does," but the identity of such defendants could be reasonably adduced through discovery).

### 2. Naphcare

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts sufficient to show that the alleged violation was committed by a person acting under color of state law, and state action is required in order to establish a Fourteenth Amendment violation. West v. Atkins, 487 U.S. 42, 48–49 (1988). These two issues require the same inquiries. Id. at 49 (recognizing that if a defendant's conduct satisfies the state action requirement of the Fourteenth Amendment that conduct also is action under color of state law for purposes of § 1983). Naphcare is a private entity. Merely providing contracted services to a state entity does not mean that the private contractor is acting under color of state law. Manhattan Cmty. Access Corp. v. Halleck, 139 S. Ct. 1921, 1931-32 (2019). Such a private entity acts under color of state law only if it is performing a traditional, exclusive public function. Id. at 1931. For purposes of this order, the Court will assume that Naphcare was acting under color of state law by providing medical services to detainees at CCDC.

But when a private entity acts under color of law to perform a traditional, exclusive function in place of a municipality, then the plaintiff must establish a policy or custom theory of municipal liability against that private entity. Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1139 (9th Cir. 2012). This means that if Banda wishes to hold Naphcare liable, he must first state a colorable claim against Naphcare based on a theory of municipal liability.

A municipality may not be held liable under § 1983 on a respondeat superior theory, which means that a municipality may not be held liable merely because it

employed someone who violated someone's civil rights. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690-91 (1978). Thus, Naphcare may not be held liable merely because it employed a nurse who violated Banda's constitutional rights. Municipalities and private entities like Naphcare may be held liable under § 1983 if action under a municipal custom or policy caused a constitutional violation that damaged the plaintiff. Id. This requires allegations that a custom or policy existed and that it caused the alleged constitutional deprivation. Castro v. County of Los Angeles, 833 F.3d 1060, 1075 (9th Cir. 2016). Furthermore, the plaintiff also must show that the custom or policy was adhered to with deliberate indifference to the prisoners' constitutional rights. Id. at 1076. The deliberate indifference standard for municipalities is an objective inquiry into whether the facts known by the municipal policymakers put them on constructive notice that the particular conduct or omission is substantially certain to result in the violation of constitutional rights. Id.

The Court finds that the allegations are sufficient for screening purposes to state a colorable claim that Naphcare had a custom that medical staff would not follow through on physicians' orders to flush and sanitize inmates' I.V.s or remove the I.V.s until the inmates were being cleared to leave the infirmary. The Fourteenth Amendment municipal liability for deliberate medical indifference claim can therefore proceed against Naphcare.

### 3. Discovering Does true names

Banda needs to discover the true identities of the Naphcare employees who allegedly failed to follow doctor's orders to clean and flush his I.V. when he was treated for dehydration and other issues in CCDC's infirmary in April and May 2017. Banda informs the Court—and provides evidence to show—that the NDOC has his complete medical record, including from the time that he was incarcerated at CCDC. (ECF No. 29 at 3, 6–8).

The Court construes Banda's Objection to its Order (ECF No. 22) denying his motion for a Rule 45 subpoena as a Motion for Reconsideration. "As long as a district court has jurisdiction over [a] case, then it possesses the inherent procedural power to

reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." City of L.A. v. Santa Monica BayKeeper, 254 F.3d 882, 886 (9th Cir. 2001) (quoting Melancon v. Texaco, Inc., 659 F.2d 551, 553 (5th Cir. 1981). A district court may grant a motion for reconsideration where: (1) it is presented with newly discovered evidence; (2) it has committed clear error or the initial decision was manifestly unjust; or (3) there has been an intervening change in controlling law. Nunes v. Ashcroft, 375 F.3d 805, 807 (9th Cir. 2004). The Court finds that its initial decision denying Plaintiff's motion for a Rule 45 subpoena was error. Plaintiff has represented that he requires his medical records to identify the Doe defendants. See Gillespie, 629 F.2d at 642-43 ("[T]he plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds."). He has also represented that the custodian of medical records at Wellpath has copies of his medical records. The Court therefore vacates its order at ECF No. 27, grants Plaintiff's objection (reconstrued as a Motion for Reconsideration) (ECF No. 23), and directs the Clerk of the Court to issue the Subpoena to Produce Documents that Plaintiff attached to his Motion for Court to Issue a Rule 45 Subpoena Duces Tecum (ECF No. 21), so that Wellpath is directed to provide Plaintiff with the records he seeks.

Banda is also advised that once Defendant Naphcare is served with process and discovery commences in this action, he can also use discovery procedures to ask that Defendant to answer written questions and produce documents about the names of the staff members who did or could have addressed his medical needs when he was in CCDC's infirmary in April and May 2017.

## II.     MOTION FOR APPOINTMENT OF COUNSEL

Finally, like many prisoners who file civil-rights claims, Banda asks the Court to find and appoint him a free lawyer. (ECF No. 29.) A litigant does not have a constitutional right to appointed counsel in 42 U.S.C. § 1983 civil-rights claims. Storseth v. Spellman, 654 F.2d 1349, 1353 (9th Cir. 1981). The statute that governs this type of litigation, 28

U.S.C. § 1915(e)(1), provides that "[t]he court may request an attorney to represent any person unable to afford counsel." However, the Court will appoint counsel for indigent civil litigants only in "exceptional circumstances." Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009) (§ 1983 action). "When determining whether 'exceptional circumstances' exist, a court must consider 'the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved." Id. "Neither of these considerations is dispositive and instead must be viewed together." Id.

Banda argues that he is illiterate and developmentally disabled and relies on other prisoners for legal assistance. (ECF No. 29 at 3). Specifically, prisoner Toney A. White, III, is Banda's "departmentally authorized legal assistant . . . ." (Id.) The Court notes that Toney A. White prepared or helped Banda prepare the FAC. (See ECF No. 16 at 14). Banda contends that he will no longer be able to work with White because Banda discovered in September 2021 that he was being transferred away from HDSP. But that has not occurred. And the NDOC prisoner database states that White is still incarcerated at HDSP, too.

The Court does find that extraordinary circumstances do exist in this case for the reasons articulated by the Plaintiff. The Court will accordingly grant Banda's motion for the appointment of counsel. This case is referred to the Pro Bono Program adopted in Amended General Order 2019-07 for the purpose of screening for financial eligibility (if necessary) and identifying counsel willing to be appointed as pro bono counsel for Plaintiff. By referring this case to the Program, the Court is not expressing an opinion as to the merits of the case. The Court further notes that it cannot guarantee counsel through this program, but it can refer the case to the program. The Court further permits Plaintiff to request a stay of the case pending appointment of counsel.

### III.   CONCLUSION

It is therefore ordered that the Court's order screening the First Amended Complaint (ECF No. 20) **is vacated**.

It is further ordered that the Court's orders dated May 30, 2021, and June 28, 2021, (ECF Nos. 22, 25, 27) **are vacated**.

The Clerk of the Court is directed to refile Plaintiff's Response/Objections (ECF No. 23) as a Motion for Reconsideration of the Court's April 26, 2021 Order.

It is further ordered that the Motion for Reconsideration (ECF No. 23) **is granted** and the Court's April 26, 2021 Order (ECF No. 22) is **vacated.**

It is further ordered that the Clerk of the Court shall issue the Subpoena to Produce Documents that Plaintiff attached to his Motion for Court to Issue a Rule 45 Subpoena Duces Tecum (ECF No. 21). The Clerk of the Court is instructed to send Banda a copy of the Subpoena.

It is further ordered that Banda's motion for an order to show cause and motion for the Court to act on that motion (ECF Nos. 28 and 30) **are denied as moot**.

It is further ordered that the First Amended Complaint (ECF No. 16) is the operative pleading.

It is further ordered that the Fourteenth Amendment deliberate medical indifference claim **can proceed** against Defendants John/Jane Does 1–5.

It is further ordered that the Fourteenth Amendment municipal liability for deliberate medical indifference claim **can proceed** against Defendant Naphcare, Inc.

It is further ordered that Banda's motion for the appointment of counsel (ECF No. 29) **is granted**.

It is further ordered that this case is referred to the Pro Bono Program for appointment of counsel for the purposes identified herein.

It is further ordered that the Clerk shall also forward this order to the Pro Bono Liaison.

It is further ordered that the Clerk of the Court shall send Banda **two** copies of the USM-285 form. It is ordered that Banda has **until May 9, 2022** to (1) complete the USM-285 form with Defendant Naphcare, Inc.'s last-known address and (2) file that completed form with the Court.

It is further ordered that Banda has **until May 9, 2022** to (1) complete the USM-285 form with third-party Wellpath, Inc.'s last-known address and (2) file that completed form with the Court.

It is further ordered that if Banda timely files the completed USM-285 forms with the Court, the Court will issue separate orders to effectuate service on Naphcare, Inc. (as a Defendant) and to effectuate service on Wellpath, Inc. (as a non-party to produce documents under Rule 45).

Finally, the Clerk of the Court is directed to send Banda a courtesy copy of the First Amended Complaint (ECF No. 16).

DATED: March 17, 2022

_____
RICHARD F. BOULWARE, III
UNITED STATES DISTRICT JUDGE